772 So.2d 1113 (2000)
Aki Lavell WILLIAMS and Carlos Hodges, Appellants,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01467-COA.
Court of Appeals of Mississippi.
December 12, 2000.
Richard B. Lewis, Darnell Felton, Clarksdale, Attorneys for Appellants.
Office of the Attorney General by Jean Smith Vaughn, Attorney for Appellee.
*1114 Before KING, P.J., MOORE, and THOMAS, JJ.
MOORE, J., for the Court:
¶ 1. Aki Lavell Williams and Carlos Hodges were indicted June 7, 1999 for aiding and abetting or acting in concert with one another to commit the crime of armed robbery of Jackie Wallace on March 14, 1999, while she was attempting to deliver a pizza. Williams and Hodges were jointly tried and convicted of the lesser-included offense of simple robbery. They were each sentenced to nine years, with five years suspended. Williams cites the following issues in his appeal and Hodges also cites the second issue in his appeal:

I. WHETHER THE EXCLUSION OF 18 TO 20 YEAR OLD CITIZENS FROM THE VENIRE VIOLATED AKI LAVELL WILLIAMS RIGHTS UNDER THE SIXTH AMENDMENT FAIR CROSS SECTION REQUIREMENT AND THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT?
Williams and Hodges both cite the following issue on appeal:

II. WHETHER THE VERDICTS WERE AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE?
Finding no error, we affirm.

FACTS
¶ 2. At 6:43 p.m. on March 14, 1999, Sandra Sims, the assistant manager of the Clarksdale Domino's took a pizza order from a person who identified himself as "George." The order was dispatched to Jackie Wallace, a delivery person for Domino's, at 6:54 p.m. to be delivered to 635 Lincoln Street. During her first attempt to deliver the pizza, Wallace saw the defendant, Hodges, sitting on the front porch of a house on Lincoln Street. She asked him if he ordered a pizza, and he told her that he did not, but that it was to be delivered to the blue house across the street. Wallace knocked on the door of the blue house and no one answered. Wallace then returned to Domino's. When she arrived, her supervisor handed her the phone and told her to talk to a young man who was calling in reference to the undelivered pizza. The young man told Wallace that the address on the printed order was not correct because the pizza had been ordered from his aunt's house. He asked her to deliver the pizza to the blue house on Lincoln again and someone would be there this time. Wallace left again to deliver the pizza with about twenty dollars in change.
¶ 3. When Wallace returned to the blue house, she saw a young boy in the yard. He told her that his parents were in the house. Wallace knocked on the door and no one came. At that point, Hodges walked across the street and told Wallace that she may have to go around back and knock on a window so the residents would hear her. She refused and told Hodges to walk to the back. He laughed and walked around back where he knocked and shouted, "Your pizza is here." Hodges then walked back across the street. When Wallace turned around to leave, she saw another young man in the yard holding a stick. The young man jumped out at her and shouted, "Give me what you got." Wallace said, "What?" The young man, identified by Wallace as defendant Williams, punched Wallace in the eye and repeated, "Give me what you got." Wallace complied by giving him the pizza and the change she was carrying, then returned to Domino's. The assistant manager testified that she saw Wallace return to Domino's with a bruise on her cheek.
¶ 4. According to the owner of the blue house, George Jones, the house was vacant in 1999 and had been for two years. He lives across the street from the blue house. The evening that the robbery occurred, Jones's daughter, Sabrina Buchanan, was visiting him at his house on Lincoln Street. She saw Williams and Hodges in the front yard of the blue house and she saw a Domino's pizza delivery car come down *1115 Lincoln Street. Another resident on Lincoln Street, Stephanie Fox, received a call from Domino's asking whether she had ordered a pizza. She responded that she had not, but that Lavell Williams had placed the order from her house. Testimony from Tiffany Hodges, Hodges's sister and Williams's girlfriend, placed the defendants at the Hodges's home during the time of the robbery. Hodges's and Williams's parents were not at home, and Hodges had been left to babysit his younger siblings, including his ten year old brother. Hodges and Williams both deny taking part in the robbery or even being on Lincoln Street that day.

LAW AND ANALYSIS

I. WHETHER THE EXCLUSION OF 18 TO 20 YEAR OLD CITIZENS FROM THE VENIRE VIOLATED AKI LAVELL WILLIAMS RIGHTS UNDER THE SIXTH AMENDMENT FAIR CROSS-SECTION REQUIREMENT AND THE EQUAL PROTECTION CLAUSE OF THE FOURTEEN AMENDMENT?
¶ 5. At trial, Williams made an ore tenus motion to include voters aged eighteen to twenty in the jury venire. When the judge asked what the law is on this issue, Williams's attorney replied, "The law is I don't have a leg to stand on." The trial judge then denied the motion.
¶ 6. Williams cites law concerning the exclusion of jurors based on race and gender. Hernandez v. Texas, 347 U.S. 475, 479, 74 S.Ct. 667, 98 L.Ed. 866 (1954); J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Williams argues that eighteen to twenty year old's are a cognizable group due to their economic status and physical appearance and are therefore being improperly excluded from serving on a jury. The main thrust of Williams argument is that because Williams is under twenty-one, he cannot be tried by a jury of his peers. The State rebuts this argument by pointing out that no where in the Constitution is there a guarantee of being tried by a jury of your peers and further, that the Hernandez court held that a person is only entitled to be tried by qualified jurors regardless of national origin or descent. In Mississippi, a qualified juror is defined, in part, as being over the age of 21. Miss. Code Ann. § 13-5-1 (1972). Article 14 section 264 of the Mississippi Constitution gives the legislature the power to provide for the qualifications of jurors. Therefore, it seems as though the proper forum for this argument to be made is to the legislature instead of an appellate court.

II. WHETHER THE VERDICTS WERE AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE?
¶ 7. Williams and Hodges both allege that the evidence is not sufficient to support their convictions and that the verdict was against the overwhelming weight of the evidence. Sufficiency questions are raised in motions for directed verdict and also in JNOV motions. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Where a defendant moves for JNOV or a directed verdict, the trial court considers all of the credible evidence consistent with the defendant's guilt, giving the prosecution the benefit of all favorable inferences that may be reasonably drawn from this evidence. Id. This court is authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fair minded jurors could not find the accused guilty. Wetz v. State, 503 So.2d 803, 808 (Miss.1987). As to whether the verdict is against the overwhelming weight of the evidence, a similar standard is used. A motion for new trial should only be granted when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. Wetz, 503 So.2d at 812. The appellate court must accept as true all evidence favorable to the State, *1116 and may not reverse absent an abuse of discretion. McClain, 625 So.2d at 781.
¶ 8. Here, Williams and Hodges were indicted for armed robbery, but convicted of the lesser-included offense of simple robbery. Robbery is defined as taking the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person. Miss.Code Ann. § 97-3-73 (Rev.2000). The victim in this case, Jackie Wallace, was able to positively identify the defendants as the men who robbed her. Furthermore, other testimony was heard which corroborated Wallace's story. One woman saw the appellants on Lincoln Street that evening. Another witness testified that Williams used her telephone to order the pizza Wallace was attempting to deliver. Wallace was seen returning to Domino's after her second trip to Lincoln Street with a bruised face. The fact that Williams and Hodges know each other and had the opportunity to plan and commit this robbery only adds to the wealth of evidence which the jury based its verdict upon. In light of the evidence presented, the trial court did not abuse its discretion in denying the appellants' motions for new trial and directed verdict.
¶ 9. THE JUDGMENTS OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF AKI LAVELLE WILLIAMS AND CARLOS HODGES OF ROBBERY, SENTENCES OF NINE YEARS WITH FIVE YEARS SUSPENDED TO BE SERVED IN THE CUSTODY AND CONTROL OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ARE AFFIRMED. SENTENCES IMPOSED TO RUN CONSECUTIVELY TO ANY AND ALL PREVIOUS SENTENCES. COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MYERS, PAYNE, and THOMAS, JJ., CONCUR.